[No. 15420.　Department One.—January 3, 1895.]

## WILLIAM PEPPER, RESPONDENT, *v.* SOUTHERN PACIFIC COMPANY, APPELLANT.

RAILROAD COMPANIES—NEGLIGENCE—APPROACH OF CROSSING WITHOUT WARNING — CONTRIBUTORY NEGLIGENCE — RAPID DRIVING ACROSS TRACK—ACTION FOR DEATH.—Notwithstanding the negligence of a railroad company in not giving any warning of the approach of the train at a crossing, at the rate of thirty or thirty-five miles per hour, yet, where the negligence of a person killed in driving rapidly across the track contributed proximately to the act resulting in his death, there can be no recovery in an action for the death.

ID.—OBSTRUCTION OF VIEW—WANT OF ORDINARY CARE.—The fact that the view of the driver while approaching the crossing was obstructed

after crossing an avenue from which the approach of a train could be seen made it negligence on his part to drive at a rate of speed which not only interfered with his hearing an approaching train, but made it difficult or impossible to stop; and ordinary care for his own safety required him to stop in order that his hearing should not also be obstructed, and in any event to make his approach so slowly as to give him complete control of his team and enable him to stop instantly if occasion required.

ID.—SPEED AND LATENESS OF TRAIN.—Neither the fact that the train was running at an unusual rate of speed, nor the fact that it was eight minutes late, can affect the question of the contributory negligence of the deceased, or excuse his rapid driving across the track without proper precautions against danger.

ID.—BLOWING OF WHISTLE—FRIGHTENING OF HORSES.—The blowing of the whistle by the engineer, when he saw the wagon approaching the track behind some trees at a rapid gait, was not negligence; but, under such circumstances, it was the duty of the engineer to attract the driver's attention by blowing the whistle, and the fact that the blowing of the whistle may have frightened the horses, and caused them to run more rapidly across the track, does not render the blowing of the whistle an act of negligence.

ID.—DAMAGES FOR DEATH OF RELATIVE—PECUNIARY LOSS—INSTRUCTION.— In an action for damages for the death of a relative the relations exist-ing between plaintiff and deceased can only be considered in estimating the pecuniary loss, and an instruction in an action by a father for the death of his son, that the measure of damages is not alone the pecuniary loss and injury sustained by the plaintiff in the loss of his son, but in assessing the damages the jury may, in addition, take into consideration the loss, if any, in being deprived of the comfort, society, and protection of deceased by reason of his death, is erroneous.

ID.—ACTION BY FATHER—LOSS OF SON OF MATURE AGE—RESIDENCE— INSTRUCTION AS TO DEPRIVATION.—Where the deceased was of mature age, and had a legal right to change his residence, and was not living with his father when killed, the case is not like that of husband and wife, or parent and minor child, and it seems that the jury ought not in such case to be instructed in relation to compensation to the father for the deprivation of the comfort, society, and protection of the deceased.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial.

The facts are stated in the opinion of the court.

*H. V. Morehouse, Hiram D. Tuttle, H. L. Gear, Isaac Frohman,* and *J. E. Foulds,* for Appellant.

The uncontradicted evidence establishes such con-tributory negligence on the part of the deceased in his

very rapid approach to the dangerous crossing of the railroad track, in view of his means of knowledge both as to the usual time for passage of the morning train from Los Gatos to San Jose, and as to the fact that this particular train had not yet passed that crossing, as must bar all claim to relief in this action. (*Abbett* v. *Chicago etc. Ry. Co.*, 30 Minn. 482; *Cones* v. *Cincinnati etc. Ry. Co.*, 114 Ind. 328; *Wilds* v. *Hudson River R. R. Co.*, 29 N. Y. 328, 331; *Spencer* v. *Utica etc. R. R. Co.*, 5 Barb. 337; *Lesan* v. *Maine Cent. R. R. Co.*, 77 Me. 88; *Pennsylvania Co.* v. *Morel*, 40 Ohio St. 338; *Chicago etc. R. R. Co.* v. *Fears*, 53 Ill. 116; *Chicago etc. R. R. Co.* v. *Jacobs*, 63 Ill. 179, 180; *Grows* v. *Maine Cent. R. R. Co.*, 67 Me. 100–05; *Grippen* v. *New York Cent. R. R. Co.*, 40 N. Y. 34, 51, 52; *Flemming* v. *Western Pac. R. R. Co.*, 49 Cal. 257, 258; *Glascock* v. *Central Pac. R. R. Co.*, 73 Cal. 140; *Trousclair* v. *Pacific Coast Steamship Co.*, 80 Cal. 525; *Dascomb* v. *Buffalo etc. R. R. Co.*, 27 Barb. 221, 222; *Mackey* v. *New York Cent. R. R. Co.*, 27 Barb. 528, 542; *Hager* v. *Southern Pac. Co.*, 98 Cal. 309; *Haring* v. *New York etc. R. R. Co.*, 13 Barb. 14, 15; *Schaefert* v. *Chicago etc. Ry. Co.*, 62 Iowa, 624; *Benton* v. *Central R. R. Co.*, 42 Iowa, 192; *Indiana etc. Ry. Co.* v. *Hammock*, 113 Ind. 1; *Allen* v. *Maine Cent. R. R. Co.*, 82 Me. 111; *Salter* v. *Utica etc. R. R. Co.*, 75 N. Y. 279, 280.) In each of the following cases it was held contributory negligence as matter of law to drive toward and upon a railroad crossing without using any precaution to look or listen for an approaching train in time to stop before crossing the track. (*Turner* v. *Hannibal etc. R. R. Co.*, 74 Mo. 603; *Underhill* v. *Chicago etc. Ry. Co.*, 81 Mich. 43; *Nash* v. *New York Cent. etc. R. R. Co.*, 125 N. Y. 715; *Louisville etc. Ry. Co.* v. *Stommel*, 126 Ind. 35; *Rhoades* v. *Chicago etc. Ry. Co.*, 58 Mich. 263; *Cincinnati etc. Ry. Co.* v. *Howard*, 124 Ind. 284; *Mann* v. *Belt R. R. etc. Co.*, 128 Ind. 138; *Harris* v. *Minneapolis etc. Ry. Co.*, 37 Minn. 47; *Brown* v. *Milwaukee etc. Ry. Co.*, 22 Minn. 165; *Pence* v. *Chicago etc. Ry. Co.*, 63 Iowa, 746.) In each of the following additional cases the view of the train was

obstructed until very near the crossing, and it was held to be contributory negligence as matter of law to drive upon the track without halting to listen or look for an approaching train or stopping for it to pass. (*Chase* v. *Maine Cent. R. R. Co.*, 78 Me. 346; *Terre Haute etc. R. R. Co.* v. *Clark*, 73 Ind. 169, 174; *McCall* v. *New York Cent. R. R. Co.*, 54 N. Y. 643; *Hanover R. R. Co.* v. *Coyle*, 55 Pa. St. 401; *Pennsylvania R. R. Co.* v. *Beale*, 73 Pa. St. 509; 13 Am. Rep. 753; *Union Pac. Ry. Co.* v. *Adams*, 33 Kan. 427; *Pennsylvania R. R. Co.* v. *Righter*, 42 N. J. L. 181, 187; *Gothard* v. *Alabama etc. R. R. Co.*, 67 Ala. 115, 119; *Cleveland etc. Ry. Co.* v. *Elliott*, 28 Ohio St. 356, 357; *Merkle* v. *New York etc. R. R. Co.*, 49 N. J. L. 473; *Durbin* v. *Oregon Ry. & Nav. Co.*, 17 Or. 5; 11 Am. St. Rep. 778; *Lake Shore etc. R. R. Co.* v. *Miller*, 25 Mich. 286, 302; *Haas* v. *Grand Rapids etc. R. R. Co.*, 47 Mich 401; *Brady* v. *Toledo etc. R. R. Co.*, 81 Mich. 616.) The question of contributory negligence becomes a question of law when it arises upon undisputed and clearly ascertained facts, about which there is no conflict of evidence, and where the course of ordinary prudence is clear and was not followed by the plaintiff. (*Flemming* v. *Western Pac. R. R. Co.*, 49 Cal. 257; *Deville* v. *Southern Pac. R. R. Co.*, 50 Cal. 383; *Glascock* v. *Central Pac. R. R. Co.*, 73 Cal. 141; *Trousclair* v. *Pacific Coast Steamship Co.*, 80 Cal. 525; *Esrey* v. *Southern Pac. Co.*, 88 Cal. 406; *Hager* v. *Southern Pac. Co.*, 98 Cal. 309.) Loss of the comfort, society, and protection of the deceased is not an element of damages proper to be considered by the jury, and the court erred in its instruction thereon to them. (*Morgan* v. *Southern Pac. Co.*, 95 Cal. 510; 29 Am. St. Rep. 143.)

*D. M. Delmas, William L. Gill,* and *Bull & Cleary,* for Respondent.

After regular train time travelers on the highway are entitled to assume and rely, at least to some extent, upon the fact that the train has passed, and to govern themselves accordingly. (*Hudson* v. *Louisville etc.*

*R. R. Co.*, 14 Bush. 303, 306; *Wright* v. *Cincinnati etc. Ry. Co.*, 94 Ky. 114.)   The court cannot assume or infer, in the absence of proof to that effect, that deceased was familiar with this particular crossing, or knew of the times for trains.   (*Louisville etc. R. R. Co.* v. *Goetz*, 79 Ky. 442; 42 Am. Rep. 227.)   The evidence was conflicting upon the questions of negligence and contributory negligence, and therefore the verdict of the jury should not be disturbed.   (*McKeever* v. *Market St. R. R. Co.*, 59 Cal. 294, 300; *Rice* v. *Cunningham*, 29 Cal. 492, 495, 496.)   The evidence tending to sustain the verdict will be assumed as true, and the contrary evidence as untrue.   (*California Bank* v. *Sayre*, 85 Cal. 102.)   The question of contributory negligence is ordinarily one for a jury.   (*Jamison* v. *San Jose etc. R. R. Co.*, 55 Cal. 593; *Schierhold* v. *North Beach etc. R. R.*, 40 Cal. 447; *Franklin* v. *Southern Cal. Motor etc. Co.*, 85 Cal. 63, 70; Deering on Negligence, sec. 403, and cases cited; 2 Shearman and Redfield on Negligence, 282, note 3, and cases cited; 1 Shearman and Redfield on Negligence, sec. 114.) In cases not unlike this the question of the contributory negligence of the deceased was held one of fact and not of law.   (*Nehrbas* v. *Central Pac. R. R. Co.*, 62 Cal. 320; *Hynes* v. *San Francisco etc. R. R. Co.*, 65 Cal. 316; *Schum* v. *Pennsylvania R. R. Co.*, 107 Pa. St. 8, 14; 52 Am. Rep. 468; *Kellogg* v. *New York Cent. etc. R. R. Co.*, 79 N. Y. 72; *Pennsylvania R. R. Co.* v. *Ogier*, 35 Pa. St. 60; 78 Am. Dec. 322.)   It is for the jury to pass upon the facts of contributory negligence, and for them to draw the inferences of fact, and their verdict will not be disturbed, unless no such conclusion could be drawn in the minds of reasonable men.   (*McDermott* v. *San Francisco etc. R. R. Co.*, 68 Cal. 33, 34.)   Whether or not a traveler in approaching a crossing is guilty of contributory negligence under all the circumstances is ordinarily and in the great majority of cases a question of fact for the jury.   (*Massoth* v. *Delaware etc. Canal Co.*, 64 N. Y. 524, 525, 529, 530; *Omaha etc. R. R. Co.* v. *O'Donnell*, 22 Neb. 475; *Wright* v. *Cincinnati etc. Ry.*

*Co.*, 94 Ky. 114; *Tyler* v. *New York etc. R. R. Co.*, 137
Mass. 238, 241–43; *Wesley* v. *Chicago etc. Ry. Co.*, 84
Iowa, 441; *Toledo etc. Ry. Co.* v. *Kline*, 135 Ill. 41; *Terre
Haute etc. R. R. Co.* v. *Voelker*, 129 Ill. 541; *Greany* v.
*Long Island R. R. Co.*, 101 N. Y. 419, 425, 428; *Leonard* v.
*New York Cent. R. R. Co.*, 42 N.Y. Super. Ct. 225, 231, 232;
*Gulf etc. Ry. Co.* v. *Anderson*, 76 Tex. 244; *Cranston* v.
*New York Cent. R. R. Co.*, 39 Hun, 308, 309.) And this
is particularly so where there are obstructions to the
traveler's view in approaching the track. (*Strong* v.
*Sacramento etc. R. R. Co.*, 61 Cal. 326; *Artz* v. *Chicago
etc. R. R. Co.*, 34 Iowa, 153; *Laverenz* v. *Chicago etc. Ry.
Co.*, 56 Iowa, 689; *Kellogg* v. *New York Cent. R. R. Co.*,
79 N. Y. 72; *Massoth* v. *Delaware etc. Canal Co.*, 64 N. Y.
524; Beach on Contributory Negligence, 203.) It was
not negligence for the deceased not to have anticipated
negligence on the part of the defendant, as he was justi-
fied in supposing that the defendant would perform its
duty. (*Strong* v. *Sacramento etc. R. R. Co.*, 61 Cal. 326,
328, 329; *Kennayde* v. *Pacific R. R. Co.*, 45 Mo. 255, 261,
262; *Newson* v. *New York Cent. R. R. Co.*, 29 N. Y. 383,
389, 390; Deering on Negligence, sec. 16; 4 Am. & Eng.
Ency. of Law, 942, note.) Because the usual signals
were not given he had the right to assume that no train
was approaching the crossing, until, at any rate, he
had reached a point where he could look up and down
the track. (*Strong* v. *Sacramento etc. R. R. Co.*, 61 Cal.
326, 329.) If, relying upon this assumption, and unable
to see the track by reason of the obstructions, he pro-
ceeded to the crossing and to a point where he could
get an unobstructed view, driving, as the evidence here
shows, at a moderate rate, and, arriving at or near this
point, his horses, ordinarily gentle and well broken,
were frightened by the sudden and unannounced ap-
proach of the swiftly flying train, and by the sharp
blowing of the danger signal almost in their ears, and,
through such fright, came into collision with the train,
it cannot be said, under such circumstances, that as
matter of law he was guilty of contributory negligence,

but the question was properly for the jury. (*Strong* v. *Sacramento etc. R. R. Co.*, 61 Cal. 326, 328–30; *Hendrickson* v. *Great Northern Ry. Co.*, 49 Minn. 245; 32 Am. St. Rep. 540; *Faber* v. *St. Paul etc. R. R. Co.*, 29 Minn. 465; *Texas etc. Ry. Co.* v. *Chapman*, 57 Tex. 75, 80, 82; *Cosgrove* v. *New York Cent. etc. R. R. Co.*, 87 N. Y. 88, 90–92; 41 Am. Rep. 355; *Norton* v. *Eastern R. R. Co.*, 113 Mass. 366, 368–70; *Prescott* v. *Eastern R. R. Co.*, 113 Mass. 370, 371; *Pollock* v. *Eastern R. R. Co.*, 124 Mass. 158; *Hudson* v. *Louisville etc. R. R. Co.*, 14 Bush. 303–05; *Voak* v. *Northern etc. Ry. Co.*, 75 N. Y. 320; 2 Shearman and Redfield on Negligence, sec. 474.)  It cannot, of course, be imputed to the deceased as contributory negligence that he traveled toward the crossing in his wagon.  He had a legal right to use and travel upon the highway, and to pass over the crossing, and his right in this respect was not subordinate to that of the railroad company. (*Strong* v. *Sacramento etc. R. R. Co.*, 61 Cal. 326–28; *Black* v. *Burlington etc. Ry. Co.*, 38 Iowa, 516; *Chicago etc. Ry. Co.* v. *Hatch*, 79 Ill. 138; *Pennsylvania Co.* v. *Krick*, 47 Ind. 371; 1 Thompson on Negligence, 415.)  The deceased here, in the absence of evidence showing him to be at fault, is presumed to have been diligent; to have had a reasonable regard for his own safety; to have acted on the instinct of self-preservation, and, therefore, not to have approached the crossing without first taking the precaution to look and listen, so far as he could, for the train. (Code Civ. Proc., sec. 1963, subds. 1, 4, 28; *Gay* v. *Winter*, 34 Cal. 153, 163, 164; *Nehrbas* v. *Central Pac. R. R. Co.*, 62 Cal. 320, 335; *McBride* v. *Northern Pac. R. R. Co.*, 19 Or. 64; *Crumpley* v. *Hannibal etc. R. R. Co.*, 111 Mo. 152, and numerous cases cited; *Hendrickson* v. *Great Northern Ry. Co.*, 49 Minn. 245; 32 Am. St. Rep. 540; *Schum* v. *Pennsylvania R. R. Co.*, 107 Pa. St. 8, 12; 52 Am. Rep. 468; *Pennsylvania R. R. Co.* v. *Weber*, 76 Pa. St. 157; *Louisville etc. R. R. Co.* v. *Goetz*, 79 Ky. 442, 447–49; 42 Am. Rep. 227; *Eskridge* v. *Cincinnati etc. Ry. Co.*, 89 Ky. 367; *Keese* v. *New York etc. R. R. Co.*, 67 Barb. 205–07; *Weiss* v. *Pennsylvania R. R. Co.*, 79 Pa. St. 387;

39 Am. & Eng. R. R. Cas. 615, notes; 1 Shearman and Redfield on Negligence, sec. 114, pp. 196, 197; 4 Am. & Eng. Ency. of Law, 940, and cases in notes.) No presumption arises from the fact of collision that he did not look or listen, or, if he did, that he rode heedlessly to his death. (*Guggenheim* v. *Lake Shore etc. Ry. Co.*, 66 Mich. 150; *Schum* v. *Pennsylvania R. R. Co.*, 107 Pa. St. 8, 14; 52 Am. Rep. 468; *Cahill* v. *Cincinnati etc. Ry. Co.*, 92 Ky. 345.) If there is no direct evidence that he did not look or listen, it is for the jury to determine whether he did or not, or, if he had looked and listened, whether he could have seen the train in time to have avoided the collision. Where there is no evidence showing failure to look or listen the court cannot presume that he imperiled his own safety by not looking or listening. (*Palmer* v. *New York Cent. etc. R. R. Co.*, 112 N. Y. 234; *Cahill* v. *Cincinnati etc. Ry. Co.*, 92 Ky. 345.) If these obstructions were such as to wholly obscure the view, and there is evidence showing, or in any event warranting the inference, that they were, and in support of the verdict, it will be assumed such was the fact, then the deceased, while passing in front of these obstructions, was not obliged to look. The law would not require of him such a vain act. It is unnecessary to look when it is impossible to see. (*Nash* v. *New York Cent. etc. R. R. Co.*, 1 N. Y. Supp. 269, 270; *Abbett* v. *Chicago etc. R. R. Co.*, 30 Minn. 482; *Baxter* v. *Troy etc. R. R. Co.*, 41 N. Y. 502, 505; *McGuire* v. *Hudson*, 2 Daly, 76, 78; *Ormsbee* v. *Boston etc. R. R. Co.*, 14 R. I. 102–04; 51 Am. Rep. 354; *Leonard* v. *New York Cent. R. R. Co.*, 42 N. Y. Super. Ct. 225, 231; *Cranston* v. *New York Cent. R. R. Co.*, 39 Hun, 308, 310.) The train was behind time, and, assuming that the deceased knew this fact, it would not be necessary for him to look and listen with the same diligence as if he were approaching the crossing on the known schedule time for the train's passage. In the absence of the warning signal he would be entitled to rely on the fact that the train had already passed, until, at any rate, he had reached a point where

he could have an unobstructed view. (*Guggenheim* v. *Lake Shore etc. Ry. Co.*, 66 Mich. 150; *Hudson* v. *Louisville'etc. R. R.*, 14 Bush, 303, 306; *Wright* v. *Cincinnati etc. Ry. Co.*, 94 Ky. 114.)   The circumstance that a train is not running on time, and fails to give timely warning of its approach, may justify the traveler in assuming that the track is clear. (*Cahill* v. *Cincinnati etc. Ry. Co.*, 92 Ky. 345.)   It was not as matter of law the duty of deceased to stop his team, and look and listen, much less to get out of the wagon and go ahead and reconnoitre.   At most, whether or not, under the circumstances, either of these were precautions enjoined by ordinary care and prudence was a question for the jury. (*Strong* v. *Sacramento etc. R. R. Co.*, 61 Cal. 326–29; *Guggenheim* v. *Lake Shore etc. Ry. Co.*, 66 Mich. 150; *Kelly* v. *St. Paul etc. R. R. Co.*, 29 Minn. 1, 4; *Baxter* v. *Troy etc. R. R. Co.*, 41 N. Y. 502–05; *Davis* v. *New York Cent. R. R. Co.*, 47 N. Y. 400–02; Deering on Negligence, sec. 252.)   The court did not err in its instruction allowing the jury to consider, in its estimation of the damages, plaintiff's deprivation of the comfort, society, and protection of his deceased son. (*Munro* v. *Pacific etc. Dredging Co.*, 84 Cal. 515, 525–27; 18 Am. St. Rep. 248; *Beeson* v. *Green Mountain etc. Co.*, 57 Cal. 20; *Cook* v. *Clay St. etc. R. R. Co.*, 60 Cal. 604.)

The COURT.—Miles Pepper, a young man of twenty-five years, in driving across the track of the defendant's railroad in or near the town of Los Gatos, was killed by a passing train.   Miles was never married, and the plaintiff, his father and heir at law, brought this action, alleging that his son's death was caused by the carelessness and negligence of the defendant.

The answer denied all negligence on the part of the defendant, and alleged that the death of the deceased was caused by his own negligence.

The jury found for the plaintiff, and assessed his damages at eight thousand dollars.   This appeal is from

the judgment and from an order denying defendant's motion for a new trial.

Several exceptions were taken to evidence and to instructions given and refused, and it is further specified that the verdict is not justified by the evidence in many particulars. The more important specifications of insufficiency of the evidence are, in substance: 1. That the evidence was insufficient to show negligence on the part of the defendant; and 2. That it does show negligence on the part of the deceased contributing proximately to the accident.

1. The complaint alleged the negligence of the defendant to consist in not giving any warning, either by ringing a bell or sounding a whistle, of the approach of the train, and in causing the train to approach the crossing at a reckless and negligent rate of speed, and in its negligence in obstructing the view of its track at said crossing.

Some of plaintiff's witnesses testified that no bell was rung or whistle blown as a warning of the approach of the train to the crossing, nor until the danger signal was blown, when the engine was so near the crossing that it was too late to prevent the accident; others said they did not hear any whistle or bell until the danger signal was given; whilst about an equal number of defendant's witnesses testified that the bell was rung continuously from the time the train left the station at Los Gatos, a little more than three-fourths of a mile from the place of the accident, until the train stopped after the accident.

It is not necessary to discuss the question whether this evidence was sufficient to support a finding by the jury that the bell was not rung, inasmuch as the negligence of the defendant in not giving warning of the approach of the train to the crossing—if it did not give such warning—is not conclusive of its liability.

As to the rate of speed of the train the evidence was without conflict that it was going at the rate of thirty or thirty-five miles per hour. It cannot be said, as matter

of law, that it is negligent or dangerous to run at that speed; and there is nothing in the record to show, as matter of fact, that it was negligent, unless it can be said to be negligence to cross any public road at a speed of thirty-five miles an hour, and that is not claimed by respondent.

Nor is there any thing in the record tending to show that the defendant obstructed the view of its track at said crossing, whether negligently or otherwise.

Conceding, for the purposes of the case, that the defendant did not give the required warning of the approach of its train to the crossing, and that the omission was negligent, we think that the verdict was not justified by the evidence, for the reason that the defendant's negligence proximately contributed to cause the accident resulting in his death.

There is not only no evidence that the deceased used any care or made any effort to ascertain whether a train was approaching, but the evidence excludes the possibility of his having used any reasonable care or caution in approaching the crossing. The fact that his view was obstructed, after he crossed University avenue, made it negligence on his part to drive at a rate of speed which not only interfered with his hearing an approaching train, but made it difficult or impossible to stop. If he could not see an approaching train because his vision was obstructed ordinary care for his own safety required him to stop in order that his hearing should not also be obstructed, and in any event to make his approach so slowly as to give him complete control of his team, and enable him to stop instantly if occasion required. ⊚

So far as the negligence of the deceased is concerned we see no conflict in the evidence; and it is well settled in this state and elsewhere that, if his negligence contributed proximately to the accident resulting in his death, the plaintiff cannot recover, even though the defendant negligently omitted to give the warning of the approach of the train which the law and its duty

required.  (*Hager* v. *Southern Pac. Co.*, 98 Cal. 309; *Flemming* v. *Western Pac. R. R. Co.*, 49 Cal. 253; *Glascock* v. *Central Pac. R. R. Co.*, 73 Cal. 137.)

It is said, however, that the train was running at a rate of speed faster than usual.  This could not affect the question, since the deceased could not have been misled by the unusual speed of the train, unless he saw or heard the train, and undertook to cross ahead of it; and to make such attempt and fail is conclusive evidence of negligence.

Nor is the fact that the train was eight minutes late any excuse for the neglect of the deceased to take proper precautions in approaching the track.  If he knew the precise time the train passed this crossing when on time he must have known that it had not passed.  He crossed the track going east about fifteen minutes before the accident, which was before the train was due, and while he was on the east side he was at no time beyond sight and hearing of the train if it had passed.  On the other hand, if he did not know when the train was due, it was clearly his duty, in the exercise of reasonable care and prudence for his own safety, to use all reasonable means to ascertain whether he might then cross without danger from a passing train.

It is argued by respondent that "if his horses were frightened by the negligent blowing of the whistle, and ran before they reached the right of way," it would not show that he did not intend to stop, look, and listen, when he reached a point where he could view the track.

This argument assumes that the blowing of the whistle was negligence.  We think it was not.  The engineer, when he saw the wagon approaching behind the trees at a rapid gait, could not assume that the driver heard the train, and, under such circumstances, his duty was to attract the driver's attention by blowing the whistle.  If the deceased had stopped his team, and thus indicated that he was aware of the approaching train, and was waiting for it to pass before attempting to cross, a different question might have been presented

if the horses became frightened and unmanageable because of the sounding of the whistle.

In a similar case the supreme court of Iowa said: "When the engineer saw the team the whistle sounded twice. This, as we suppose, was the call for brakes, but counsel for the plaintiff insist that if it had not been done the collision would not have occurred. Possibly this is so, but the question is, Was the engineer negligent in thus sounding the whistle? We think not. In the first place, the engineer saw the horses close to the track, and that a collision would certainly occur unless something was done immediately to prevent it. To sound the whistle under the circumstances in the pending emergency was, we think, prudent and proper. There was no time for reflection. It was the usual thing to do, and, if the engineer had failed to do so, we think he possibly would have been negligent if a collision had occurred because of such failure." (*Schaefert* v. *Chicago etc. Ry. Co.*, 62 Iowa, 624.)

No exceptions were taken to the instructions given at plaintiff's request, but, as the judgment and order must be reversed upon the ground hereinbefore considered, it is proper to notice instructions not excepted to, in view of further proceedings.

The fifth instruction given to the jury upon the point last above discussed was misleading and erroneous in two particulars: 1. That it assumes that if the deceased could not see the train, and was not aware of its approach, that he was not negligent. We have already held that, if he could not see the train because of obstructions, he was negligent in not resorting to other means reasonably within his power to ascertain whether a train was near; and 2. It assumes that in blowing the whistle the engineer was negligent.

The court instructed the jury, at defendant's request, that the damages must be confined to the pecuniary loss suffered by the plaintiff; but afterward, upon its own motion, the court further instructed the jury " that the measure of damages is not alone the pecuniary loss and

CV. CAL.—26

injury sustained by the plaintiff in the loss of his son, as just explained, but in assessing the damages you may, in addition, take into consideration the loss, if any, sustained by plaintiff in being deprived of the comfort, society, and protection of the deceased by reason of his death. . . . . You are not to take into consideration sorrow, grief, or mental suffering, if any, occasioned by the death of decedent."

This instruction is erroneous.

In *Morgan* v. *Southern Pac. Co.*, 95 Cal. 510, 29 Am. St. Rep. 143, the court below, in an action brought by the mother for the death of her infant daughter, charged the jury that "the jury is not limited by the actual pecuniary injury sustained by her by reason of the death of her child"; and it was held that the instruction was erroneous.

This question was fully discussed in that case, and it was clearly held that, in an action for damages for the death of a relative, the relations existing between the plaintiff and the deceased could only be considered in estimating the pecuniary loss. Here the jury were instructed that they were "not limited by the actual pecuniary injury sustained by the plaintiff." The instruction, therefore, permitted the jury to give the plaintiff more than his "actual" pecuniary loss. What meaning the court intended to convey by the word "actual" is not clear, but it is comprehensive enough to include all pecuniary loss, and that in actions of this character is the limit of compensatory damages. Besides, the jury were instructed that they might "in addition"—that is, in addition to the actual pecuniary injury—"take into consideration the loss, if any, in being deprived of the comfort, society, and protection of the deceased." Here "the loss" is not restricted to pecuniary loss, but, as was said in *Morgan* v. *Southern Pac. Co.*, 95 Cal. 510, 29 Am. St. Rep. 143, the jury "were given wide range to run into any wild and excessive verdict which their caprice might suggest." It may well be doubted whether the facts of this case justi-

fied any, even the most guarded, instruction in relation to compensation for the deprivation of the comfort, society, and protection of the deceased. The son was twenty-five years of age, and had the legal right to change his residence to a remote part of the state, or of the world, at any time he chose. He was not living with the plaintiff, though in the same town. The case was not like that of husband and wife, a relation which the law presumes would have continued until the death of the plaintiff, nor like that of parent and minor child, where the right to select the residence of the child and to retain his society during minority is given by the law.

Some other instructions are criticised by appellant, but the general discussion we have given will sufficiently cover all other questions arising upon the instructions.

The only serious error in ruling upon the admission of evidence was corrected by the court.

The judgment and order appealed from are reversed, and the cause remanded.