[S. F. No. 1647.   Department One.—November 23, 1900.]

MARY WALES, Respondent, v. PACIFIC ELECTRIC MOTOR COMPANY, Appellant.

ACTION FOR DEATH—ELECTRIC WIRE NOT PROPERLY INSULATED—VIOLATION OF ORDINANCE—CHANGE OF POSITION OF WIRE.—In an action for death caused by an improperly insulated electric wire maintained in violation of a city ordinance, the right of recovery is not precluded by the mere fact that the original position of the wire may have been subsequently changed by some extrinsic cause.

ID.—MEASURE OF DAMAGES—PECUNIARY LOSS—LOSS OF SOCIETY—ERRONEOUS INSTRUCTION.—In an action by a mother for the death of her son, the measure of damages is the pecuniary loss to the mother; and though the jury may be allowed to consider the loss suffered in being deprived of the comfort, society, and pro-

tection of the son, they can only be considered for the purpose of fixing the pecuniary loss. It is reversible error to instruct the jury that, in addition to the pecuniary loss, damages may be awarded in compensation for the loss of society.

ID.—EXCEPTION TO PARTS OF CHARGE.—An exception embodying certain portions of the charge of the court, and stating that "the action of the court in giving said portions of said charge was contrary to law," is sufficiently specific to raise a question of law presented by a particular portion of the charge so excepted to.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion of the court.

John Flournoy, for Appellant.

Sullivan & Sullivan, for Respondent.

GAROUTTE, J.—This is an appeal from a judgment in favor of Mary Wales, based upon the death of her son, alleged to have been killed by coming in contact with a live electric wire, which was improperly insulated and maintained by defendant in violation of an ordinance of the city of San Francisco. Deceased was engaged in painting a building at the time, and, while changing the position of the wire by taking hold of it, he received a shock which precipitated him to the street below and caused his death. The facts are ample to support the verdict, and it is unfortunate that the giving of certain instructions to the jury constitutes error which demands a retrial of the case.

The electric wires were situated upon the cornice of the building and fastened thereon by wooden brackets. It is in evidence that one of these brackets had been broken off from its position by the foreman of the painters a short time prior to the accident, which act probably changed, to a very limited extent, the location of the wire which subsequently caused the death of the deceased. In view of the evidence upon this point, the defendant requested, and the court gave, the following instruction to the jury: "That before plaintiff can recover in this action you must be satisfied that her decedent, without contributory negligence on his part, received his injuries by coming in contact with a wire in the position in which it was maintained

by the defendant; and if you find that he received his injuries by coming in contact with a wire which had been broken from the insulator, and not in the position in which it was maintained by the defendant, then your verdict should be for defendant." By reason of our conclusion as to the unsoundness of another instruction we will not analyze the foregoing proposition of law in detail. If it be intended by the language used to declare that a mere change in the position of the wire by some extraneous element, after it was originally placed upon the building by defendant, in violation of a city ordinance, acquitted it of negligence in this case, then the instruction is radically wrong. Defendant placed the wire upon the building and used it there, and the mere fact that the location of the wire may have been subsequently changed by some extrinsic cause, of itself, in no way defeats plaintiff's right of recovery. Defendant maintained the wires upon the building in violation of the ordinance, and would be equally guilty regardless of any change in their position. As already suggested, it becomes unnecessary to decide whether or not the jury disobeyed this instruction in finding a verdict for the plaintiff.

In enlightening the jury as to the measure of damages the court said: "That is to say, you are to ascertain here what amount, if any, this party contributed to the care and support of the plaintiff here, his mother; not the amount which he earned, as counsel properly stated, but the amount which he contributed to her support and care. And in estimating that amount, as previously stated, you may take into consideration his health, physical ability to labor, and his habits. And in addition to that the law has also said that you may award damages in compensation for the loss of his society." We have been cited to no case where the law says "damages may be awarded for the loss of society." As we read and understand the law, it says directly to the contrary. It is essentially and alone pecuniary loss to the parent which he may recover in damages for the death of his child. In *Pepper v. Southern Pac. Co.*, 105 Cal. 401, the following instruction was declared erroneous: "That the measure of damages is not alone the pecuniary loss and injury sustained by the plaintiff in the loss of his son, as just explained, but in assessing the damages, you

may in addition take into consideration the loss, if any, sustained by plaintiff in being deprived of the comfort, society, and protection of the deceased by reason of his death." In *Lange v. Schoettler*, 115 Cal. 391, it is said: "It is true in the case of a mother or a wife the jury have been allowed to consider the fact that they were deprived of the comfort, society, and protection of a son or husband, but it has always been held that this was in strict accordance with the rule that only the pecuniary value of the life to the relatives could be recovered." In *Harrison v. Sutter Street Ry. Co.*, 116 Cal. 156, we find this language: "While the jury have the right in such a case to consider the loss suffered by the widow in being deprived of the comfort, society, and protection of her husband, they can regard these things only for the purpose of fixing the pecuniary value of his life. The instruction here was calculated to lead the jury into the error of supposing that they could on this account add something more than pecuniary loss." It may well be said in this case that the instruction was calculated to lead the jury in fixing the amount of the verdict to add something more than pecuniary loss. (See, also, *Green v. Southern Pac. Co.*, 122 Cal. 563; *Morgan v. Southern Pac. Co.*, 95 Cal. 510.[1]) When a jury is told that in making up a verdict it may award damages in compensation for the loss of the society of the deceased, it can only mean what the language so plainly imports, and that is, damages may be awarded for the mere loss of society regardless of any actual pecuniary loss.

The instruction to which our attention has just been directed is found in the general charge of the court to the jury, and the point is now made by the respondent that the exception to it is too weak to serve the purpose of a valid exception. It is declared to be too general. The exception is in the following words: "Be it also remembered that defendant duly excepted and now excepts to the following portions of the charge given to the jury by the court on its own motion, and insists that the action of the court in giving said portions of said charge was contrary to law." Then follows that portion of the charge which includes the part which we have just been con-

---

[1] 29 Am. St. Rep. 143.

sidering.  Under the authority of *Bernstein v. Downs*, 112 Cal. 205, we hold the exception sufficiently broad to raise the question here discussed.  By the portion of the charge to which the exception was directed the court declared to the jury the measure of damages which should control them in arriving at their verdict.  It related solely to the measure of damages and constituted a separate and distinct branch of the charge.  We deem an exception thereto sufficiently specific.  The fact that one of the elements of damage going to make up the measure was stated correctly does not change the rule of law.  All the elements together constituted the measure furnished to the jury, and if one element of damage was wrongly stated, the measure was a defective one, and an exception to it as a whole was sufficient.

For the foregoing reasons the judgment is reversed and the cause remanded for a new trial.

Harrison, J., and Van Dyke, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion on the 24th of December, 1900:

BEATTY, C. J.—I dissent from the order denying a rehearing because in my opinion the decision in Department overrules, without mentioning it, the case of *Beeson v. Green Mountain Co.*, 57 Cal. 20.  If the doctrine of that case is to be wholly set aside, I think it should be done by the court in Bank plainly and unequivocally, so that hereafter the superior courts may have some certain guide in giving instructions as to the elements of damage in cases of this character.  In the Beeson case it was held that in estimating the pecuniary damages to the plaintiff the jury could consider two elements —loss of support and loss of society—and an instruction of the trial court to that effect was sustained.  In this case the instruction for the giving of which the judgment is reversed states the same identical proposition, and nothing more.  In this respect it differs in the same way and to the same extent that the Beeson case differs from the cases cited as authority in the opinion of the court.  In every one of those cases

it was held, and with some reason, that the instruction complained of told the jury that in addition to the pecuniary damage to plaintiff they could award damages for loss of society. The charge here does not bear such a construction. It merely tells the jury what the two elements of damage in such cases are.

As to the Beeson case, it may or may not lay down the correct doctrine. Certain it is, however, that it has never been overruled by this court. On the contrary, it has been repeatedly cited and followed, and where it has not been followed the court has been at pains to point out the distinction above mentioned, viz., that the instruction condemned allowed damages for loss of society in addition to all pecuniary damage.

I think the doctrine of the court on this point ought to be made clear.