[Civ. No. 4775. First Appellate District, Division Two.—May 17, 1924.]

## EDA BISSETT, Appellant, v. SOUTH SAN FRANCISCO BELT RAILWAY COMPANY, Respondent.

[1] NEGLIGENCE—DEATH OF TRUCK DRIVER—TRUCK STRUCK BY ON-COMING TRAIN—SOUNDING OF BELL—EVIDENCE.—In an action for damages for the death of a truck driver who was killed when he, though thoroughly familiar with the physical conditions, backed out of a private road on to a railroad track without making any observations for an oncoming train, whether or not the defendant company rang a bell or was bound to ring a bell upon crossing such private road became immaterial.

[2] ID.—EVIDENCE—PROXIMATE CAUSE—QUESTION OF LAW—NONSUIT. In such action, the only possible conclusion from the evidence is that the negligence of deceased proximately caused his death, and this being so, a question of law was presented and a judgment of nonsuit was proper.

(1) 33 Cyc., pp. 1002, 1007.   (2) 33 Cyc., pp. 1003, 1006, 1117.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Ross Campbell, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Reisner & Honey and Leigh S. Deming for Appellant.

McKinstry, Haber & Firebaugh for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment entered against her after the court had granted the defendant's motion for a nonsuit at the conclusion of the evidence offered by the plaintiff. This motion was granted upon the ground that the evidence showed contributory negligence as a matter of law on the part of Ulster

1. Accidents to automobiles at railroad crossings, notes, Ann. Cas. 1913B, 680; Ann. Cas. 1915B, 767. See, also, 3 Cal. Jur. 919; 22 R. C. L. 1015.

2. Respective functions of court and jury in regard to question of proximate cause, note, Ann. Cas. 1913B, 351. See, also, 19 Cal. Jur. 644, 647, 742; 20 R. C. L. 166.

Bissett, deceased, the son of the plaintiff, for whose death damages were sought by his mother upon the ground that her son's death was caused by the negligence of the defendant.

The Growers Rice Milling Company, hereinafter referred to as the Milling Company, occupied four acres of land at South San Francisco, San Mateo County, California. On the north line of the premises and extending in an easterly and westerly direction about four hundred to five hundred feet is a picket fence ten feet high. Near the center of the fence is a gate twelve feet wide used for ingress to and egress from the premises. Through this gate extends a dirt road, leading from the inclosure over a railroad track (hereinafter described) and extending to Swift Avenue, which is a public thoroughfare. This dirt road is a private road used only for the business of the Milling Company. In front and north of the inclosure is a railroad track owned and operated by the defendant, the south rail of which is six feet two inches from the fence and the opening of the gate therein. This track crosses the private dirt road of the Milling Company and runs from the Southern Pacific depot to the premises of the Western Meat Company which is located about a quarter of a mile farther east than the Milling Company. The railroad had been operating over this track for many years prior to the accident herein discussed, and deceased was familiar with the physical conditions and the operation of the railroad, for it appears that he had been delivering material to the Milling Company for several years, driving into its premises sometimes as often as a dozen times a day.

The railroad track runs in an easterly and westerly direction and from the gate referred to toward the west (the direction from which the train came which is involved here) the track is a perfectly straight one for a distance of a mile. The atmosphere was clear on the afternoon of the accident; and from the gate, the track could be seen, perfectly, for a distance of a mile.

Inside of the picket fence and within the inclosure of the Milling Company, south of said picket fence and west of the dirt road, is an incinerator about forty feet high with a smokestack about sixty feet high. The north side of the incinerator is about six feet south of the fence, and the east

side is about thirty feet from the west side of the road. This incinerator is so situated that from a point inside the Milling Company's property, one's vision in a northwesterly direction through the openings between the pickets of the fence is obstructed. An object coming from the west along the railroad track could not be seen for a brief period when the incinerator was between it and a person within the inclosure.

Upon the day of the accident the deceased drove an automobile truck from Swift Avenue over the dirt road, through the gate and into the premises of the Milling Company, stopping about forty-five feet south of the gate. At this point he unloaded his truck and then, without stopping or looking for a train approaching along the railroad track, he straightened out his truck and backed it in a northerly direction along this private road through the gate and on to the railroad track. When the back of his truck was upon the track the engine of the defendant coming from the west was within a few feet of it and deceased jumped from the truck into the picket fence and died as the result of the injuries which he received in so doing. The engine struck the truck and damaged it.

The evidence appears in the record uncontradicted that deceased backed north out of the gate while he was facing south with his hands upon the steering wheel and without stopping and looking for an approaching train, which might have been seen from the gateway.

Fifteen or twenty feet beyond the place where his truck was stopped and just off and to the west of the dirt road is a garage shed twenty-five or thirty feet wide, open on the east side. The depth of this shed from east to west plus the width of the dirt road is about sixty feet. At the time deceased backed his truck out of the gate the garage shed was empty and he might have run south from the point where he unloaded and turned westerly into the garage shed and then proceeded out of the shed driving forward. Had he done so the accident, most probably, would not have happened, because deceased would have seen the train when he reached the gate, and there was six feet between the gate and the nearest rail of the track. It also appears that after unloading his truck deceased could have proceeded two hundred feet south and turned his car without reversing his engine and then proceeded out of the gate driving forward.

Under the conditions above narrated the deceased, thoroughly familiar with the physical conditions, backed out of this private road on to a railroad track without making any observations for an oncoming train. The length of the truck was about sixteen feet, and the evidence discloses that driving backward, as deceased was doing, seated about ten feet from the rear of his truck, the truck was upon the railroad track before deceased had reached the gate where a view of the track could be obtained.

It seems that a mere statement of the facts of the case concludes the appellant. [1] Whether or not the defendant company rang a bell or was bound to ring a bell upon crossing this private road becomes immaterial. (*Herbert* v. *Southern Pac. Co.*, 121 Cal. 227, 232 [53 Pac. 651]; *Pepper* v. *Southern Pac. Co.*, 105 Cal. 389, 398 [38 Pac. 974].) [2] The only possible conclusion from the evidence is that the negligence of deceased proximately caused his death; that being so, it presented a question of law and the judgment of nonsuit was proper. (*Murray* v. *Southern Pac. Co.*, 177 Cal. 1 [169 Pac. 675].)

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.